1
2
3
4
5
6
7
8
9
10
11
12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

                        Plaintiff,

        v.

CHARLES S. BROWN, et al,

                        Defendants.

CASE NO. C24-5021

ORDER

13        This matter is before the Court on plaintiff United States' motion for summary

14    judgment. Dkt. 31. Defendant Charles Brown committed tax fraud in 2004 and 2006. The

15    government issued civil tax assessments in 2010 requiring Brown to pay back the

16    fraudulently obtained refunds. The government then brought criminal charges, and

17    Brown pled guilty to four counts of violating 26 U.S.C. § 7206(1) in April 2014. The

18    court accepted his plea and ordered restitution. When his criminal appeal rights expired,

19    the IRS issued restitution assessments based on the restitution order in April 2015. The

20    government now seeks to reduce the unpaid restitution assessments against Brown to

21    judgment and foreclose on the restitution liens on his property. Brown does not contest

22

the amount of money that the government seeks, and he concedes that he received proper notice of the assessments and tax liens on his property.

But he argues that the government cannot reduce the restitution assessments to judgment because they are invalid "second assessments" of the "same tax" that the earlier civil assessments targeted. He asserts that because both the civil and restitution assessments cover the same fraudulent activity, the civil assessment controls for purposes of limitations period on IRS collection. Because the limitations period on collections ran on the civil assessments before the present suit, Brown argues the government cannot reduce the restitution assessments to judgment because the IRS can "only assess the same tax once" and reducing the "second" assessments to judgment would "obliterate" statute of limitations on collection.

The Court concludes that the text of 26 U.S.C. §§ 6201(a), 6501(c)(11), and precedent make plain that civil and restitution assessments are legally separate. The government's summary judgment motion to reduce the restitution assessments to judgement and foreclose on the restitution liens despite the expired civil assessments is therefore **GRANTED**.

## I. BACKGROUND

This case[1] stems from Brown's fraudulent tax filings in 2004 and 2006.

---

[1] The facts are drawn from both the government and Brown's respective summary judgment briefing. Brown "largely agrees with the facts set out in the [government's] motion." Dkt. 32 at 2. The Court notes where there is disagreement and construes all facts and reasonable inferences in his favor.

He falsely claimed to have earned income that the IRS withheld, and because of these

fraudulently claimed withholdings, Brown offset his reported tax liabilities for 2004 and

2006 and received improper refunds. Dkt. 31-14 at ¶¶ 5-8. Brown fraudulently obtained a

refund of $891,469.79 in 2004 and $378,843.95 in 2006. *Id*. He spent nearly all the

fraudulently obtained refunds before the IRS discovered the fraud. Dkt. 31-6 at USA-

0000280.

**A.    Civil assessments**

In January 2010, the IRS assessed Brown's civil income tax liabilities for 2004

and 2006 for the amount that he had fraudulently claimed the IRS withheld in each

year— $1,359,285 in 2004 and $824,250 in 2006. Dkt. 31-15 at ¶ 1(a). Brown made

some payments on the civil assessments, but concedes he had not paid back all the

refunds he fraudulently obtained by the time the ten year limitations period on collections

for the civil assessments ran in 2020. Dkt. 31-15 at ¶ 1(f); Dkt. 31-1 at 5.

**B.    Criminal Restitution Order**

The government pursued criminal charges for the same fraudulent scheme in 2013.

A federal grand jury indicted Brown on four counts of violating 26 U.S.C. § 7206(1),

which makes it a felony to knowingly file tax returns that contain materially false

information. In April 2014, Brown pled guilty to all four counts. Dkt. 31-6. As part of his

plea, Brown agreed to pay restitution to the U.S. Treasury in the amount of

1    $1,252,181.54.[2] Dkt. 31-6 at 5. The Court accepted his plea and waived interest on the

2    $1,252,181.54 in restitution. Dkt. 31-7 at 6.

3           After Brown's appeal rights in his criminal case expired, the government asserts

4    that the IRS Criminal Investigations (CI) notified the IRS Restitution Group in Technical

5    Services (TS) that Brown had a restitution liability that the IRS needed to assess as if it

6    were a tax. Dkt. 31-1, Gee Decl. at 3. In 2015, CI apportioned the total $1,252,181.54

7    restitution liability as follows: (1) it assessed $873,337.59 as if it were a tax for 2004 and

8    (2) $378,843.95 as if it were a tax for 2006. *Id.*

9           To track the criminal restitution payments, TS established account "modules" for

10   2004 and 2006 that were separate from Brown's existing civil income tax liability

11   modules for 2004 and 2006. Dkt. 31-1 at 4. There are two "Master File Tax" (MFT)

12   module types at issue in Brown's case. The first is a MFT 30. The government asserts

13   that MFT 30 is typically the account module "that the IRS uses to assess, track, and

14   collect on an individual taxpayer's civil income tax liability for a particular tax year."

15   Dkt. 31 at 7.

16          The second is a MFT 31. The government asserts that a MFT 31 can also "assess,

17   track, and collect on a separate liability such as criminal restitution, for the same tax

18   year." *Id.* It contends that by "creating two different modules (MFT 30 for income and

19   MFT 31 for restitution), the IRS can independently track and collect on two separate

20

21          [2] This restitution amount is less than the government's total loss from issuing
     $1,270,313.74 in fraudulent refunds to Brown because Brown had made some restitution

22   payments before his plea and sentencing. *See* Dkt. 31-16 at ¶ 9; Dkt. 31-7 at 6.

liabilities that are assessed for the same year." *Id*. The IRS created separate MFT 31 modules[3] in April 2015 for Brown for 2004 and 2006, which it used to assess Brown's criminal restitution liability. *Id*. Brown admits that the IRS sent him proper notice and demand for payment and that he still has not fully paid the restitution liability. Dkt. 31-15 at ¶ 1(f); Dkt. 31-1 at 5.

By November 9, 2015, the IRS recorded a Notice of Federal Tax Lien (NFTL) against Brown with the Clark County Auditor to provide notice under 26 U.S.C. § 6323 to third parties of the statutory liens arising from the unpaid restitution assessments. Dkt. 31-21.

**C.    Government sues to reduce criminal restitution to judgment and foreclose on restitution liens on Brown's real property**

In January 2024, the government sued Brown, asserting three counts: (1) to reduce to judgment the restitution-based assessments made against Brown for 2004 and 2006, (2) to reduce to judgment separate federal income tax assessments made against Brown for 2011 and 2012, and (3) to foreclose the federal tax liens on Brown's Camas Washington property arising from both the restitution-based assessments and the income tax assessments. Dkt. 17.

The parties stipulated to partial final judgment in the government's favor on Count 2 and part of Count 3. Dkts. 26–28. The only remaining issues are Count 1, and the part

---

[3] Brown contests the reason behind and significance of the fact that the IRS created a module 31 to assess the criminal restitution. Dkt. 21 at 4. The Court addresses this argument in section "II.B" of this Order.

1    of Count 3 seeking to foreclose the federal liens arising from unpaid balance of the

2    restitution-based assessments.

3    **D.    Motion for summary judgment**

4        The government moves for summary judgment on Count 1, to reduce the criminal

5    restitutions to judgment, and on the rest of Count 3, to foreclose on the restitution liens on

6    the subject property. Dkt. 31. It argues the IRS's assessment of Brown's restitution

7    liability is presumptively correct because it has submitted Forms 4340 (Certificates of

8    Official Record of Separate Assessments sent to Brown) and the court's criminal

9    restitution order is sufficient foundation to show that the IRS properly assessed Brown's

10   restitution according to 26 U.S.C. § 6201(a)(4). Regarding Count 3, it argues the Subject

11   Property is encumbered by federal tax liens arising from the restitution-based

12   assessments because those liens arose from the date of assessment (April 2015) once

13   Brown failed to pay the assessments after notice and demand, and the liens attached to all

14   property owned by Brown, including the Camas property that he purchased in 2004.

15       Brown argues the government cannot reduce the criminal restitution assessments

16   to judgment because they are invalid second assessment of the "same tax" the IRS

17   assessed civilly in 2010. He argues the civil assessment controls the limitations period on

18   collection, and that the parties agree that ten year period expired before the IRS brought

19   this suit. Dkt. 33-7 at ¶¶ 1(a)–(b). Brown argues further that if the Court permits the

20   government to prevail here, "[a]ll the IRS would need to do to avoid the statute of

21   limitations on its administrative collection authority would be to re-assess the same tax

22

1  on a new account module, starting a new statute of limitations on collection, and thereby

2  eviscerating any limitation on collection." Dkt. 32 at 10

3      The government argues the only remaining dispute is legal rather than factual:

4  whether the IRS has authority to assess the restitution order against Brown in April 2015

5  despite prior civil assessments. It contends that the plain meaning of 26 U.S.C.

6  §§6201(a)(4) and 6501(c)(11), precedent, and the legislative history all confirm its ability

7  to reduce the 2015 restitution to judgment and foreclose on the subject property.

8      The issues are addressed in turn.

9  ## II.   DISCUSSION

10 **A.    Summary Judgment Standard**

11     Summary judgment is proper if the pleadings, the discovery and disclosure

12 materials on file, and any affidavits show that there is "no genuine dispute as to any

13 material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

14 P. 56(a). In determining whether an issue of fact exists, the Court must *view all evidence*

15 *in the light most favorable to the nonmoving party* and draw all reasonable inferences in

16 that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986);

17 *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact

18 exists where there is sufficient evidence for a reasonable factfinder to find for the

19 nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence

20 presents a sufficient disagreement to require submission to a jury or whether it is so one-

21 sided that one party must prevail as a matter of law." *Id*. at 251–52.

22

1    The moving party bears the initial burden of showing that there is no evidence that

2    supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477

3    U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then

4    must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the

5    nonmoving party fails to establish the existence of a genuine issue of material fact, "the

6    moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

7    There is no requirement that the moving party negate elements of the non-movant's case.

8    *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving party has met

9    its burden, the non-movant must then produce concrete evidence, without merely relying

10   on allegations in the pleadings, that there remain genuine factual issues. *Anderson*, 477

11   U.S. at 248.

12   **B.     The government can reduce the restitution-based assessments to judgment.**

13   The government moves for summary judgment on Count 1 to reduce the criminal

14   restitutions to judgment. It argues it has sufficient proof that it provided notice and that it

15   calculated the correct amount of restitution owed because it submitted Forms 4340 and

16   the court's criminal restitution order. Dkt. 31 at 11. Brown does not dispute that he

17   received proper notice or that the government seeks the correct amount for its restitution

18   assessments. Brown even stipulated that the restitution-based assessments were made

19   according to IRS procedure. *See* Dkt. 31-15 at ¶ 1(d)-(e). But he argues that the

20   government's 2015 year restitution assessments are invalid second assessments of the

21   "same tax" that the IRS already assessed in 2010 with civil income tax assessments and

22   cannot be reduced to judgment because the statute of limitations ran on the civil

1    assessments before the government sued.[4] The government responds Brown's arguments

2    are contrary to the plain text of 26 U.S.C. §§ 6201(a), 6501(c)(11), and caselaw holding

3    that criminal and civil assessments are legally separate. It asserts that the IRS can assess

4    restitution liability even if there are pre-existing civil assessments targeting the same

5    fraud. *See generally* Dkt. 34.

6         It is settled that to reduce restitution assessments to judgment, the government

7    must provide evidence that the IRS made the assessment with proper notice of the

8    liability due. *See Oliver v. United States*, 921 F.2d 916, 919 (9th Cir. 1990). To do so, a

9    "Form 4340 is probative evidence in and of itself and, in the absence of contrary

10   evidence, is sufficient to establish that notices and assessments were properly made."

11   *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (cleaned up). If the government

12   succeeds, the burden falls to Brown to introduce "competent and relevant evidence" to

13   show that the restitution-based assessments are incorrect. *Keogh v. Comm'r*, 713 F.2d

14   496, 501 (9th Cir. 1983).

15        The government satisfied its burden. The Forms 4340 and the restitution order are

16   more than sufficient to provide an evidentiary basis that the restitution assessments gave

17   notice and reflect the correct amount due. Accordingly, the burden shifts to Brown to

18

---

19   [4] Brown also argues he is entitled to file a surreply because the government failed to
20   address his arguments that the restitution assessments are invalid in its motion despite his having
     raised them in the stipulation of fact. Dkt. 32 at 11. A surreply is not warranted here. The fact
     that Brown flagged a statutory interpretation dispute in a stipulation of fact does not encumber
21   the government with the duty to articulate it in its own motion for summary judgment. It is
     Brown's duty to advance his own legal arguments in opposition to summary judgment, and the
22   opposition brief is the appropriate place to do so.

1    provide "competent and relevant evidence" to show that the restitution-based assessments

2    are incorrect. His attempts to do so by arguing that the restitution assessments are invalid

3    second assessments of the "same tax" as the expired civil assessments fail for the reasons

4    explained below.

5        Brown's arguments rest primarily on Title 26 Section 6201(a)(4). That section

6    allows the IRS to administratively assess restitution amounts, and instructs it to collect

7    restitution "in the same manner as if such amount were a tax." Dkt. 32 at 10 (quoting 26

8    U.S.C. § 6201(a)(4)). He contends if the IRS "had properly treated the restitution amount

9    as if it 'were a tax' as the statute requires, it would not be assessed again in 2015 because

10   the 'tax' was already assessed in 2010 and the law does not allow the IRS to continually

11   assess the same tax, thereby avoiding the statute of limitations on its ability to collect the

12   tax." *Id.*

13       Brown also relies on the fact that the IRS created an MFT 31 module to collect his

14   restitution. Dkt. 32 at 5–6. He argues that "had the restitution amount been assessed on

15   the existing module 30, it would have improperly doubled the amount of the tax liability

16   because the same tax that was the subject of the restitution order was *already* assessed."

17   *Id.* at 6. He contends that "[t]his confirms that the MFT 31 assessment is a second

18   assessment of the same tax" because "[i]f it had been a different or additional tax, it could

19   have been assessed on Module 30 and still correctly reflected the amount due." *Id.* Brown

20   also argues that the IRS violated its Internal Revenue Manual (IRM) by creating a MFT

21   31 for Brown because the IRM dictates that separate MFT 31 accounts are not used for

22

1  assessing court-ordered criminal restitution "unless there are multiple liable parties for

2  the restitution," and only Brown was responsible for the restitution. *Id*. at 6.

3          The government acknowledges that the civil and restitution assessments arise from

4  the same fraud. Dkt. 34 at 2–3. And it stipulated that the statute of limitations on the civil

5  assessments lapsed before it initiated the present lawsuit. Dkt. 34 at 2–3. But it argues

6  neither fact renders the restitution assessments invalid. Rather, it asserts the IRS has

7  independent authority to assess and collect a restitution order regardless of an underlying

8  civil tax assessment. It argues that Brown's interpretation of the provision in Section

9  6201(a)(4)(A) is grammatically wrong and contrary to its plain meaning. *Id*. at 5. It

10  asserts that the fact the IRS used a MFT 31 has no bearing on whether it is a valid

11  assessment because nothing in Title 26 or the treasury regulations restricts the IRS's use

12  of a MFT 30 versus 31. And it argues that even if the Court were to assume that the IRS

13  violated the IRM by using a MFT 31, it does not matter as matter of Ninth Circuit law

14  because the IRM does not confer rights on taxpayers and the IRS is not required to follow

15  it. Dkt. 34 at 3.

16          The plain text of 26 U.S.C. § 6201 (a) and 6501(c)(11) resolve this dispute. The

17  parties agree that the relevant provisions for criminal restitution assessments fall

18  primarily under 26 U.S.C. § 6201 (a)(4):

19          (4) Certain orders of criminal restitution.--
             (A) In general.--The Secretary shall assess and collect the amount of
20          restitution *under an order* pursuant to section 3556 of title 18, United States
             Code, for failure to pay any tax imposed under this title in the same manner
21          *as if such amount were such tax*.

22

1  26 U.S.C. § 6201 (a)(4)(A) (emphasis added). The parties dispute the meaning of Section

2  6201(a)(4)(A)'s final phrase instructing that orders are treated "in the same manner as if

3  such amount were such tax." The government correctly observes that use of the

4  subjunctive mood—"as if [it] were"—indicates that the restitution assessment "is not

5  literally a tax." *Klein v. Comm'r*, 149 T.C. 341, 352 (2017). The subjunctive mood

6  expresses conditions that are "contrary to fact," often as a means of comparison. *Klein,*

7  149 T.C. at 351. The subjunctive here compares restitution assessments to that for taxes,

8  but it does convert them into a tax. "Congress adopted . . . the counterfactual hypothesis

9  that restitution is a tax for the limited purpose of enabling the IRS to assess that amount,

10  thus creating an account receivable on the taxpayer's transcript against which the

11  *restitution* payment can be credited." *Klein v. Comm'r*, 149 T.C. 341, 352 (2017). The

12  subjunctive language precludes Brown's interpretation that Section 6201(a)(4)(A)

13  converts the assessment to a tax or confines the IRS to limitations periods and other

14  restraints unique to taxes.

15      Brown arguments also crash headlong into the express restrictions on challenges

16  to restitution assessments detailed in Section 6201(a)(4)(C):

17      **(C) Restriction on challenge of assessment.**--The amount of such
        restitution may not be challenged by the person against whom assessed on
18      the basis of the *existence* or amount of the underlying tax liability in any
        proceeding authorized under this title (including in any suit or proceeding
19      in court permitted under section 7422).

20  *Id*. (emphasis added). Brown plainly challenges his restitution assessments "on the basis

21  of the existence" of the civil tax liability already in place at the time the IRS created the

22

1  MFT 31 to collect the restitution assessments. The terms of Section 6201(a)(4)(C)

2  prohibit the Court from indulging that challenge.

3         Title 26 also expressly precludes Brown's statute of limitations argument. It

4  provides that the IRS can assess a restitution order for a failure to pay a tax "at any time."

5  26 U.S.C. § 6501(c)(11). Brown acknowledges this, but argues that this "exception" to

6  the ordinary statute of limitations on tax assessments does "not allow the IRS to make

7  two assessments of the same tax." Dkt. 32 at 10–11. This argument relies on his theory

8  that the restitution order is literally a tax, and that because the restitution order and the

9  civil tax liability were based on the same fraudulent scheme they constitute "the same

10  tax." Dkt. 32 at 10. The Court rejected these arguments *supra.* Indulging Brown's

11  invitation to impose the statute of limitations for taxes on his restitution order assessment

12  would require ignoring the plain text of 6501(c)(11) which explicitly allows the IRS to

13  assess restitution orders "at any time." Congress could have limited the IRS's ability to

14  assess restitution when an underlying civil assessment was already in place, but it did not.

15         The government argues persuasively that allowing the IRS to independently assess

16  both his underlying civil tax assessments and his restitution-based assessments for 2004

17  and 2006 would not "obliterate" the ten-year collection statute of limitations. Dkt. 34 at 4

18  (quoting Dkt. 32 at 9). Rather, the statute of limitations still applies separately to each

19  assessment. Where, as here, the IRS independently assesses two liabilities that arise from

20  the same conduct, it links the two liabilities for payment purposes so that it only collects

21  the full liability once. *See* Dkt. 31-1, Gee Decl., at ¶ 17. But its doing so does not obviate

22  the limitations period on either assessment.

1    Caselaw also precludes Brown's arguments. Courts have long held that a

2    restitution liability is legally separate from civil liability and is not a determination of any

3    civil obligation. *Klein*, 149 T.C. at 361 ("The restitution obligation is not a civil tax

4    liability, and Congress did not change that fact when it authorized the IRS in 2010 to

5    assess and collect restitution 'in the same manner as if such amount were such tax.'").

6    Restitution orders serve a "penal and rehabilitative interest" rather than "a desire for

7    compensation." *Kelly v. Robinson*, 479 U.S. 36, 53 (1986). The two are distinct in

8    purpose and in what limitations Title 26 imposes on the IRS for collection.

9    Brown acknowledges these cases, but argues that they are inapplicable here

10    because the cases do not "deal with the unique factual situation here where both a civil

11    assessment and the restitution amount" arise from the same conduct and underlying

12    liability. Dkt. 32 at 11-12. He argues that typically, a restitution order precedes a civil

13    assessment, and that separate restitution and civil assessments are only appropriate where

14    the civil assessment rests on "different set of facts not taken into account by the

15    restitution order at issue." *Id*. at 12. He offers no authority for this assertion. The

16    government argues persuasively that "taking Brown's argument to its logical conclusion,

17    the IRS would never be able to assess a restitution-based assessment and a civil tax

18    assessment for the same underlying conduct; the IRS would have to choose one." Dkt. 34

19    at 9. Title 26 makes no such demands on the IRS and the Court will not either.

20    Finally, whether the IRS assessed on an MFT 30 or an MFT 31 has no bearing on

21    the validity of the restitution assessment. It is merely an IRS-created process for making

22    assessments, and nothing in Title 26 or the treasury regulations requires the IRS to assess

on an MFT 30 or MFT 31. Brown's argument that using a MFT 31 violated the IRM is

similarly of no legal consequence. The Ninth Circuit holds that compliance with the IRM

"is not mandatory" and that the IRM "does not have the force of law and does not confer

rights on taxpayers." *Urban v. Comm'r*, 964 F.2d 888, 890 (9th Cir. 1992) (not

mandatory); *Fargo v. Comm'r*, 447 F.3d 706, 713 (9th Cir. 2006) (lacks force of law).

In sum, Brown's arguments are at odds with the plain meaning of several sections

of Title 26 and contrary to caselaw. *See Rashkovski*, 301 F.3d 1133, 1136 (9th Cir. 2002)

(rejecting a defendant's argument "at odds with the plain meaning of the statute"). He

fails in his burden to provide "competent and relevant evidence" to show that the

restitution-based assessments are incorrect. *Keogh*, 713 F.2d at 501. Because the Court

can resolve these issues with the text of the statute and precedent, it need not delve into

the parties' competing arguments about the legislative history of Title 26. *See Lamie v.

U.S. Trustee*, 540 U.S. 526, 534 (2004). Its ability to do so makes plain that there is no

dispute of material fact that would preclude summary judgment. Brown's disputes are

entirely legal in nature. The motion for summary judgment to reduce the restitution

assessments to judgment is **GRANTED**.

**C.     The government can foreclose the restitution liens that encumber the Subject
Property**

The government seeks to foreclose on the unpaid balance of restitution based liens

on Brown's Camas property. Dkt. 31 at 9. It argues the subject property is encumbered by

liens arising from the restitution-based assessments because those liens arose from the

date of assessment once Brown failed to pay the assessments after notice and demand,

1  and the liens attached to all property owned by Brown, which includes the Camas

2  Property. It notes its priority of liens on the Camas Property is uncontested due to

3  stipulation. Dkt. 20.

4      Brown owns[5] the Camas property and he concedes that he received proper notice

5  and demand of the restitution-based tax liens on it. Dkt 31-13 at ¶ 1; Dkt. 31-20

6  (warranty deed). Indeed, he did not contest the government foreclosing on the tax liens

7  arising from 2011 and 2012 income tax assessments on the subject property. Dkts. 26–28.

8  His only argument against foreclosure is his same one that the Court rejected *supra*: that

9  the restitution assessments are invalid "second assessments of the same tax" as the civil

10  assessment.

11      It is settled law that if a taxpayer does not pay an assessment despite notice and

12  demand, federal tax liens arise on the date of assessment and attach to all property and

13  rights to property belonging to that taxpayer. 26 U.S.C. §§ 6321 and 6322; *United States*

14  *v. Hemmen*, 51 F.3d 883, 887 (9th Cir. 1995). Once the government establishes that it has

15  liens upon certain property, it may foreclose those liens, sell the property, and apply the

16  proceeds toward the assessed liabilities. *See* 26 U.S.C. § 7403.

17      The government has met its burden to foreclose on the restitution liens on the

18  subject property. Brown acquired ownership of the subject property in 2004, the IRS

19  recorded a notice of federal tax liens against Brown for the restitution-based assessments

20

21      [5] Although Brown's wife at the time, Lori Brown, was not listed on the Statutory
Warranty Deed, to the extent that she had an interest in the Subject Property, she conveyed her
22  interest in 2004 to Brown by a recorded Quit Claim Deed. Dkt. 31- 21.

in 2015, and sent proper notice and demand to Brown for the unpaid amounts. Dkt. 31, Ex. 19 (NFTL), Ex. 13 at ¶ 1(f) (concedes notice and demand).

The motion for summary judgment to foreclose the liens on the subject property arising from the restitution-based assessments, order the sale of the property (following the United States' submission of a proposed order of sale), and distribute the proceeds according to the order of the court and the parties' stipulation **GRANTED**.

### III.  ORDER

Therefore, it is hereby **ORDERED** that government's motion for summary judgment, Dkt. 31, is **GRANTED**. The government can reduce the restitution-based assessment to judgment and foreclose on the restitution based liens on the subject property.

Dated this 21st day of April, 2025.


BENJAMIN H. SETTLE
United States District Judge